UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    Case No. 19 CR 245

FRANCIS BURNS,

Defendant.

**UNITED STATES' SENTENCING MEMORANDUM**

Between 2015 and 2019, Defendant filed multiple false tax returns and requested over $2 billion in fraudulent refunds from the IRS. Neither an IRS investigation nor the seizure of the proceeds of his fraud gave him any pause. Indeed, despite being repeatedly told by the IRS that his filings were frivolous, Defendant persisted – filing multiple amended and new tax returns seeking ever-increasing sums of refunds to which he was not entitled. Although Defendant did not get access to the majority of those funds, Defendant did obtain and deposit over $3.5 million of fraudulent refunds belonging to the United States and its taxpayers.

Defendant used the money he stole to fund a lavish lifestyle. He went from surviving on money he made as a food-service worker and government benefits to living in a $750,000 home, driving a Mercedes limousine, and vacationing in Italy. All the while, Defendant bragged about his ill-gotten gains on Facebook. Defendant's crimes have resulted in a sentencing guidelines range of 262 to 327 months. The range is driven primarily by the intended loss amount, but is also increased because of his obstructive conduct. Though Defendant's crimes are serious and call out for a significant period of incarceration, the United States believes that the range is

artificially high given that Defendant never obtained the majority of the funds he sought. Thus, the United States asks this Court to impose a sentence of 60 months' incarceration, which is sufficient, but not greater than necessary to fulfill the goals of sentencing pursuant to Section 3553(a).

I.      **The Section 3553(a) Factors Support a Significant Sentence**

Section 3553(a) counsels the Court to impose a sentence that is sufficient, but not greater than necessary, to comply with the familiar purposes of federal sentencing. The Government focuses on three of those factors, each of which calls out for a significant period of incarceration here: (1) the nature of the offense and defendant's conduct since indictment; (2) the history and characteristics of the defendant; and (3) the principles of deterrence and the public's interest.

*A.   The Nature of the Offense*

Defendant's offense was brazen. Although Defendant had filed accurate and truthful tax returns prior to 2015, at the end of that year he decided to steal from the government instead of work for a living. Defendant knew that he had no estate or trust on behalf of which to file a tax return, but he filled out a number of fake 1099s and filed a tax return requesting over $130,000. When his fraud worked and he got a check from the IRS, he bragged about it on Facebook. (PSR ¶ 11). Having realized that his scheme worked, Defendant did not content himself to asking for hundreds of thousands of dollars. Instead, in 2016, his fraudulent return requested over $3.5 million. *Id.* Defendant got that money too. *Id.* And, again, he bragged about the fraud. *Id.*

Defendant did not stop there. In 2017, he asked for, and received, over $70 million from the IRS. And when the IRS stopped payment on the first check, he doubled down and requested a re-issued check. *Id.* at ¶ 13. And it is clear that Defendant did not engage in this fraud because he did not know he wasn't entitled to the money or because he thought what he was doing was lawful.

Indeed, the IRS repeatedly sent Defendant communications informing him that his filings were frivolous and fraudulent. *Id.* at ¶ 12. And the IRS clawed back the money they were able to by garnishing his accounts and seizing the properties he purchased. *Id.* at ¶¶ 11-13, 16. None of that stopped Defendant's fraud. Defendant continued filing fraudulent returns seeking ever-increasing sums of money he knew he wasn't entitled to.

Defendant's offense was not, therefore, a one-off mistake. Defendant's scheme lasted several years and continued in the face of multiple efforts by the government to tell him that what he was doing was wrong and had to stop. And Defendant continued to brag about his fraud to his friends online and used the money he stole to fund a lavish lifestyle for him and his friends. That kind of brazen conduct, undeterred by multiple efforts by the government to stop the fraud, calls out for a significant punishment.

Defendant's conduct post-indictment does too. Although Defendant was indicted in 2019, his case was not resolved until late this year because Defendant absconded from the district right before his first trial was originally scheduled. Defendant was gone for almost a year and when he was arrested and returned to the district, he lied about not realizing that he was supposed to appear for his trial. Prior to absconding, Defendant had appeared for his hearings, and had known that the case was scheduled for trial. He had undersigned counsel's contact information (email, address, and phone number) from prior communications and he knew he had standby counsel he could contact. He chose not to do that because his goal in leaving the jurisdiction was to escape punishment for his crimes. Indeed, even after he was re-arrested and brought to trial, Defendant continued to try to escape the consequences of his actions. Throughout the trial, Defendant engaged in obstructive conduct, including by throwing himself onto the floor during the second day of trial. After trial ended, the government was able to obtain Defendant's jail calls. Those calls

made clear that Defendant's stunt on October 5 was premeditated. (Exhibit A)[1]. Indeed, on the evening between the two days of trial, Defendant told his girlfriend that he had considered throwing himself on the floor to disrupt the trial. *Id.*, beginning at 11:00. The next day, that is exactly what Defendant did. He pretended to collapse and forced the entire trial to come to halt while he was sent to the hospital. Despite asking to go, however, once he was there, he refused all tests and was returned to the Courthouse. It is clear that Defendant's feigned medical emergency was just a continuation of his efforts to escape responsibility for his crimes.

Defendant's brazen criminal conduct and his obstructive behavior that continued throughout the trial call out for a significant sentence here.

*B. The History and Characteristics of Defendant.*

Defendant refused to participate in the PSR. But the information that is available about him points to an unremarkable upbringing and no prior criminal history. (PSR ¶¶ 55-62). He reported a daily marijuana habit, but gave no indication of a substance-abuse problem that could have contributed to these crimes. *Id.* at ¶ 62. He tested negative for controlled substances during his pre-trial supervision. *Id.* at ¶ 63. Defendant claimed to have some fairly significant medical problems, but has not provided any evidence of those issues. And given his feigned medical emergency at trail, there is reason to doubt the veracity of his contentions on that score. In short, there is nothing in his background or history that provides any mitigating consideration for the court.

But Defendant's conduct since the trial has demonstrated a continued lack of respect for the law, a complete lack of remorse, and a total failure to take any responsibility for his actions. Indeed, after trial, Defendant continued to dispute the validity of his trial. And even entertained

---

[1] Exhibits A and B are audio files that cannot be filed electronically. The United States is providing Exhibits A and B on a drive to the Court along with this filing and will send them separately to the Defendant.

his girlfriend's veiled threats directed to this court – simply telling her not to "talk like that on a recorded line." (Exhibit B, at 11:20).

These facts show that Defendant has no respect for the rule of law or the processes that make society function. This too, counsels in favor a significant custodial sentence in order to promote respect for the law and to deter Defendant from committing future crimes.

*C. The Public's Interest*

The official victim in this case is the IRS, but the true victims are the law-abiding, tax-paying public. The country's taxpayers suffer significantly when fraudsters don't pay taxes and suffer even more when they affirmatively steal from those who do. In this case, Defendant stole more than a million dollars from the public and used that money to buy an expensive house, an expensive car, and a fancy vacation. He gave money to friends and family and lived a lavish lifestyle on stolen funds. A significant sentence is warranted to punish that conduct and vindicate the rights of the victims here.

It is also warranted because it is important to send the message that brazen tax fraud does not go unpunished. Indeed, this Court has often recognized that the concept of "general deterrence may be more of a factor in white collar cases, where at least some of the people tempted to commit such crimes are rational actors who would be dissuaded by the prospect of prison." *United States v. Goss*, 325 F. Supp. 3d 932, 935 (E.D. Wis. 2018). The Seventh Circuit has also "endorsed the idea that white-collar criminals 'act rationally, calculating and comparing the risks and the rewards before deciding whether to engage in criminal activity.'" *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (quoting *United States v. Warner*, 792 F.3d 847, 860-61 (7th Cir. 2015)). Those concepts matter here. The public should know that filing fraudulent tax returns can expose individuals to significant consequences.

II.       **The Sentencing Guidelines**

Section 3553(a) ultimately tells this Court to consider the factors above and formulate a sentence that will be sufficient, but not greater than necessary, to reflect the seriousness of the crime, promote respect for the law, provide just punishment, afford deterrence, and protect the public. The guidelines in this case are driven primarily by the extremely high intended-loss figure. In this case, however, the Government believes those guidelines overstate the offense because Defendant never received, nor was in danger of receiving, those very high amounts. Defendant did, however, receive over $3.5 million in fraudulent returns. That amount would result in an offense level of 27 and a guidelines range of 70-87 months. Indeed, even focusing only on the amount of actual loss caused to the IRS, Defendant's guidelines range would be 57-71 months. The United States believes that latter range is the most appropriate to consider here. For that reason, the United States recommends that this Court impose a sentence of 60 months' imprisonment.

Dated this 29th day of December, 2022 in Milwaukee, Wisconsin.

Respectfully submitted,

GREGORY J. HAANSTAD
United States Attorney


By:   *s/ Julie F. Stewart*
      Julie F. Stewart
      John P. Scully
      Assistant United States Attorneys
      Office of the United States Attorney
      517 East Wisconsin Avenue, Room 530
      Milwaukee, Wisconsin 53202
      Telephone: (414) 297-1700